Bernard Gary JOHNSON, Appellant,

v.

**PUBLIC EMPLOYEES RETIREMENT BOARD and State of Alaska, Division of Retirement and Benefits, Appellees.**

No. S–4906.

Supreme Court of Alaska.

March 12, 1993.

Rehearing Denied April 15, 1993.

Bradley D. Owens, Jermain, Dunnagan & Owens, P.C., Anchorage, for appellant.

John B. Gaguine, Asst. Atty. Gen., Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

RABINOWITZ, Justice.

I. INTRODUCTION

This appeal concerns the Public Employees' Retirement System (PERS), a "defined

benefit" system that provides its members with benefits upon retirement. The specific question presented in this appeal is whether "credit" derived from Section 7 of chapter 89, SLA 1989, which reimplemented the Retirement Incentive Program, may be used to meet an age requirement of AS 39.35.370.

## II. FACTS AND PRIOR PROCEEDINGS

Bernard Gary Johnson began employment as a natural resources manager for a department of the State of Alaska on October 26, 1972. Johnson's department is a PERS employer. At the time of his November 1, 1990 retirement, Johnson's age was 51 years and three months. He had slightly over 21 years of credited PERS service, consisting of approximately 18 years of State of Alaska service and 3.681 years of military service.

Before he began his PERS covered employment, Johnson worked for approximately 2.5 years, between 1969 and 1972, for the Alaska State Housing Authority (ASHA). At the time that Johnson worked there, ASHA was not a PERS participating employer. ASHA began participation in PERS in 1981. Under the terms of ASHA's participation in PERS, past ASHA employees were not invited to participate.

In 1986, the legislature passed chapter 26, SLA, which enacted the Retirement Incentive Program (RIP). This program was designed to save state revenues by encouraging eligible employees to take early retirement.[1]

On June 2, 1989, the legislature reimplemented the RIP program, noting that its purpose was "to realize sufficient economies to offset the cost of administration and benefits to state agencies and other employers resulting from the award of retirement credits and to result in a net reduction in personnel services costs to the state or other employers during a period of declining revenue." Section 1, ch. 89, SLA 1989.

Sections 2 and 7 of Chapter 89, SLA 1989 are particularly important. They state as follows:

Section 2. RETIREMENT INCENTIVE PROGRAM.

... (g) A participant in the retirement incentive program receives a credit of three years. The three years must be applied in the following order until exhausted:

(1) to meet the age or service required for eligibility for normal retirement under AS 14.25.110 or AS 39.35.370, as appropriate;

(2) to meet the age required for early retirement under AS 14.25.110 or AS 39.-35.370, as appropriate;

(3) to reduce the actuarial adjustment required for early retirement under AS 14.-25.110 or AS 39.35.370, as appropriate,

(4) as years of credited service for calculating retirement benefits.

Section 7. POLITICAL SUBDIVISION OR PUBLIC ORGANIZATION EMPLOYMENT. Notwithstanding other provisions of law, a vested member who is a state employee and is participating in the retirement incentive program may receive credit for employment with a political subdivision or public organization before the political subdivision or organization became an employer under the system for purposes of determining eligibility for retirement under AS 14.25.110 or AS 39.35.370, as appropriate.

The member may not receive credit for those years under this subsection for purposes of determining benefits. In order for a state employee to receive credit under this subsection, the employee's participation in the program must contribute to the overall cost savings of the agency.

In September 1989, Johnson wrote to the Deputy Director of the Division of Retirement and Benefits, Robert F. Stalnaker, for confirmation of his view that his ASHA service could be used in conjunction with his Section 2(g) "credit" to increase his retirement age to 55, which would then

---

1. *See* Section 1, ch. 26, SLA 1986.

entitle him to a full normal retirement.[2] The Deputy Director responded that only the three RIP incentive years could be used to meet either age or service requirements, and that neither RIP nor AS 39.35.370 "allow a member to substitute service credit for age or vice-versa ... to meet RIP eligibility." [3] The Acting Director of the Division subsequently confirmed this decision.

Johnson retired on November 1, 1990, the last day on which he could have taken RIP retirement under the terms of the statute. In February 1990, Johnson appealed the Division's decision to the Board. The Board issued Decision 90-4 affirming the Division's decision. The Board stated:

> According to the Division the foregoing statutes preclude use of pre-participation service in any fashion to increase benefits, once eligibility has been established ... The statutes are plain on their face in providing that pre-participation service may not be credited for "purposes of determining benefits," and the Division's interpretation is reasonable.... If Mr. Johnson is already eligible for RIP, even though for the less remunerative early retirement, before application of any pre-participation service, utilization of pre-participation service is not "for purposes of determining eligibility." [4]

2. Under the early retirement program, Johnson would receive approximately $200 a month less in benefits than he would receive under the normal retirement program.

3. Although the current version of AS 39.35.370 requires that an employee be 55 to qualify for early retirement, and 60 to qualify for normal retirement, the relevant ages for Johnson are 50 and 55, respectively, as his relevant age requirements were established by an earlier statute. Since Johnson was hired before July 1, 1986, he was entitled to take normal retirement at age 55 and early retirement at age 50. Section 57, ch. 82, SLA 1986. The relevant language of former AS 39.35.370 is as follows:

> Retirement benefits (a) A terminated employee is entitled to a normal retirement benefit (1) at age 55 with at least five years credited service, or (2) with at least 20 years of credited service as a peace officer or fireman, or (3) with at least 30 years of credited service for all other employees. (b) A terminated employee is eligible for an early retirement bene-

Johnson requested reconsideration. The Board reconfirmed its decision on June 13, 1990. Johnson appealed to the Superior Court, which upheld the Board's Decision 90-4 in an opinion dated December 6, 1991. Johnson appeals from the Superior Court decision.

## III. STANDARD OF REVIEW

This case requires interpretation of the phrase "credit for employment" as well as interpretation of the overall intent and integrity of the RIP program; questions of statutory interpretation. " '[W]here ... the issues to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute.' " *Union Oil Co. v. State, Dep't of Revenue*, 560 P.2d 21, 23 (Alaska 1977) (footnote omitted), *quoted in Flisock v. State, Div. of Retirement and Benefits*, 818 P.2d 640, 642–43 (Alaska 1991). "The substitution of judgment standard is applied where the questions of law presented *do not* involve agency expertise or where the agency's specialized knowledge and experience would not be particularly probative as to the meaning of the statute." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line*, 746 P.2d 896, 903 (citations omitted) (Alaska 1987).

> fit at age 50 with at least five years credited service.

4. The Board noted under Johnson's interpretation, the following situation could arise: "[A] person of the same age as Mr. Johnson with the same number of service years with the same salary, but who was employed solely in PERS-covered service, would be eligible for lower benefits than would Mr. Johnson. It is not logical to suppose that pre-participation service should give a prospective retiree greater benefits under RIP than would the same years of service all of which were otherwise creditable. This supports the Division's reading of Section 7." The Board also stated that it "does not accept Mr. Johnson's contention that his interpretation is valid because retirement under his own interpretation of the law still yields a net cost savings. Obviously the greater retirement cost of higher monthly benefits to Mr. Johnson produces lower cost savings than otherwise. Suggesting that greater benefit payments are justified so long as 'some' savings is incurred does not follow."

## IV. DISCUSSION

### A. *Overview*

Johnson argues that he should be able to use his ASHA "credit" under Section 7 in the same manner as he can use his Section 2(g) "credit," namely, to increase his age for retirement purposes. This combination of credits would put him over the 55 year eligibility threshold for normal retirement benefits.

As we analyze the various arguments of the parties the primary question raised in this appeal is whether Johnson's interpretation of "credit for employment" for the purpose of determining eligibility for retirement is consistent with Section 7?

### B. *Did the PERS Board err in its interpretation of Section 7 of Chapter 89, SLA 1989?*

Johnson argues that Section 7 does not expressly allow or prohibit application of the credit for employment to a retiring member's age for purposes of determining eligibility for retirement. According to Johnson any prohibition against application of the section 7 employment credits to age must come from an interpretation of section 7's prohibition against the use of employment credits for purposes of determining benefits. More specifically Johnson contends that:

> If this interpretation is correct, the legislature really must have intended that employment credits could *only* be used for purposes of determining *the years of service requirements*, not "for purposes of determining eligibility for retirement under AS 39.35.370," as Section 7 clearly provides. Of course, Section 7 does not expressly support this interpretation. Thus, the state's and the superior court's analysis is not supported by any "plain meaning" in the language of Section 7.

(Emphasis in original.) .

The state counters by arguing that credit which can be used to increase an employee's retirement age is distinctly different from the "credit for employment" provided for in Section 7. More specifically the state asserts that:

Section 7 allows "credit" for employment with political subdivisions. Nowhere in the PERS statutes, AS 39.35, is "credit" for employment ever mixed or combined with age for purposes of determining eligibility for benefits or for computing the amount of benefits. *See* AS 39.35.-370 (PERS member can retire at age 60 with five years of service (55 for early retirement), *or* can retire at any age with 30 years of credited service (20 for peace officers and firefighters)). The only times that "credit" has even been allowed to adjust an employee's age upwards for retirement purposes is under the sections of the two RIP statutes (section 2(g) of the 1989 act, and section 5(c) of the 1986 act) *relating to the three "bonus" years....* Therefore, the plain language of section 7 supports the administrator's interpretation.

(Emphasis in original, footnote omitted.)

 Our review of the relevant statutory language, and in particular of Section 7, has convinced us that the phrase "credit for employment" as used in Section 7 was not intended to be combined with age to determine a member's eligibility for retirement benefits. First, as the State notes, the only instances where the legislature has explicitly allowed credit for employment to be combined with age for determining eligibility for benefits are found in section 2(g) of the 1989 RIP Act, and section 5(c) of the 1986 RIP Act. Second, we think it an unsupportable construction of the phraseology "credit for employment" to conclude that this language was intended to allow the ASHA credit employment years in question to be added to age, as opposed to credited years of employment, in determining Johnson's eligibility for benefits. In short, we hold that Section 7 employment credits were intended to, and can only be used to, determine years of service requirements in the overall determination of a member's eligibility for retirement.

AFFIRMED.